IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Paul Mullins, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:17-cv-426 |
| Plaintiff, | Judge Susan J. Dlott |
| v. | |
| Southern Ohio Pizza, Inc., et al., | |
| Defendants. | |

## PLAINTIFF'S UNOPPOSED MOTION TO PRELIMINARILY APPROVE SETTLEMENT

Plaintiff asks that the Court preliminarily approve the parties' Settlement Agreement, attached as Exhibit 1. The proposed Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit.

Plaintiff requests that the Court:

(1) Preliminarily approve the proposed settlement;

(2) Provisionally certify the settlement class described below;

(3) Approve the content, form, and distribution of the class notice and claim form;

(4) Designate Plaintiff as class representative;

(5) Preliminarily approve the service award for Plaintiff;

(6) Appoint Plaintiff's counsel as class counsel and provisionally approve Class Counsel's request for attorneys' fees and costs;

(7) Schedule a formal fairness hearing approximately 200 days after preliminary approval.

A proposed order is attached as Exhibit 2.


Respectfully submitted,

*/s/ Andrew Biller*
Andrew R. Biller (0081452)
Andrew P. Kimble (0093172)
Markovits, Stock & DeMarco LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*abiller@msdlegal.com*
*akimble@msdlegal.com*
www.msdlegal.com

*Counsel for Plaintiff*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION TO
PRELIMINARILY APPROVE SETTLEMENT

## 1. Introduction

The parties have negotiated a Settlement and Release Agreement, attached as Exhibit 1, that seeks to resolve this wage and hour lawsuit. Plaintiff now asks the Court to begin the process of finalizing the proposed Settlement Agreement.

## 2. Standard for Settlement Approval

Courts typically use a three-step procedure for approving settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202401, at *1 (S.D. Ohio Jan. 10, 2011). At this, the first step, the Court determines whether to preliminarily approve the settlement. *Id.* Next, notice of the settlement is sent to interested persons. *Id.* Finally, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement and, presumably, an Ohio law wage and hour settlement (because the same considerations apply), the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

### 3.  Background of the Lawsuit and Claims

Plaintiff Paul Mullins delivers pizzas for a Domino's brand restaurant. He brought this case on behalf of himself and similarly situated drivers to recover unpaid wages under the FLSA and Ohio law. In Plaintiff's Complaint, he alleged several wage and hour violations. The violations fall into three broad categories, discussed in more detail below.

First, Plaintiff claims that Defendants[1] paid the delivery drivers at or below minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. (the "under-reimbursement claim"). There is little dispute that employers must reimburse their employees for these costs to the extent that these costs would otherwise reduce earnings below the minimum wage. *See, e.g.*, 29 C.F.R. 531.35.

In this case, the drivers were reimbursed at an average rate of approximately $.28 per mile. Defendants contend that this rate fully compensates drivers for their expenses. Plaintiff alleges that the true vehicle cost is higher than $.28. He points to the IRS mileage reimbursement rate as a baseline, which is approximately $.55 per mile. *See* Complaint, Doc. 1, ¶108.

Second, Plaintiff claims that Defendants paid delivery drivers a tipped minimum wage for time spent in the store (the "dual jobs claim"). Plaintiff alleges that this work was non-tipped and, thus, must be paid at full minimum wage. In contrast, Defendants claim that the in-store work was directly related to tipped work and, thus, may be paid at a tipped wage rate. Defendants

---

[1] While Plaintiff uses the term "Defendants" throughout, the Domino's corporate defendants dispute that they employed Plaintiff or the other drivers and, instead, contend that only the franchisee defendants are "employers" in this action. So, while all of the defendants dispute liability, the Domino's defendants also dispute that they are employers at all.

also contended that any unrelated work did not amount to more than 20% of the class members'
in-store time.

Third, Plaintiff brings a claim for additional, liquidated damages under Ohio's Prompt
Pay Act. *Id.* at ¶¶289–293. Plaintiff's Prompt Pay Act claim is contingent on an underlying wage
and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016).
Still, for Plaintiff to prevail on the Ohio liquidated damages claim (as opposed to just repayment
of unpaid wages alone), he needs to show that there is no dispute regarding the underlying unpaid
wages. O.R.C. 4113.15(B).

### 4. Summary of Settlement Terms

The settlement agreement creates a class settlement fund of up to $1,070,000. *See* Exhibit
1. Class Members who make valid claims are eligible to receive a payment of up to three times
each of the following: (1) an additional $.17 per mile reimbursement (depending upon prior
reimbursement rates) applied to estimated miles that they drove delivering pizzas; and (2) the
difference between the full minimum wage and the tipped minimum wage each Class Member
was actually paid for inside hours worked during the same time period. The above numbers are
based on the following:

o First, for purposes of settlement negotiations the parties agreed to use a
compromise reimbursement rate of $.45 as the baseline measure of possible
damages. In other words, damages would be based on the difference between the
$.45 compromise number and the $.28 (on average) that was actually reimbursed.
The parties' agreement to such compromise rate is not to be construed as an
admission by either party that such rate is legally mandated. Such compromise
rate has been agreed to solely as a means of resolving the dispute without the
expenditure of further defense costs, and in light of the fact that the class fund is
capped at $1,070,000.

o Second, the parties used that average difference ($.17) to calculate a total alleged
under-reimbursement across the class of workers. This amount is approximately
$1,130,805.

o Third, for purposes of settlement the parties assumed that class members who make claims would be entitled to their under-reimbursement damage amount plus an additional two times this amount which represents the full damages under Ohio law (which is more favorable than the FLSA[2]) for a total $3,392,415. Again, this calculation is not to be construed as an admission that additional damages are warranted on the facts here, but solely as a means of resolving the dispute without the expenditure of further defense costs, and in light of the fact that the class fund is capped at $1,070,000.

o Fourth, for purposes of settlement the parties assumed that class members who make claims would be entitled to the difference between full minimum wage and the actual wage the class member was paid for time spent in-store plus an extra two times the difference as statutory damages under Ohio law. Using $6.00/hour as a baseline, the total amount for this claim is approximately $1,966,029 or $655,343 × 3.

o Thus, under the assumptions governing the settlement, the class members would be entitled to $5,358,444.

o Fifth, the parties agreed to cap the potential payout at $1,070,000. This amount represents approximately 20% of the amount otherwise due under the settlement. If the class members claim more than this amount, then each class member will receive a pro rata portion based on their own alleged under-reimbursement.

The settlement results in a substantial recovery for the class. The chart below illustrates the potential recovery:

| Percent of fund claimed | Average amount recovered per mile | Average amount recovered per in-store hour | Percent of alleged under-payments recovered |
|---|---|---|---|
| 19.97% or less | $.51 | $6.00 | 300% |
| 39.94% | $.255 | $3.00 | 150% |
| 100% | $.102 | $1.20 | 19.97% |

The Settlement Agreement's terms also include:

o Plaintiff's counsel will seek, and Defendants will not oppose, an award of attorneys' fees and costs of $355,000 (approximately 33% of the gross settlement value). This amount will be paid *in addition* to the settlement amount above and, thus, does not reduce the amounts going to class members. Plaintiff's expenses

---

[2] The FLSA allows workers to recover up to two times their unpaid wages. 29 U.S.C. 216(b). Ohio law allows workers to recover three times their unpaid wages. Ohio Const. Art. II, Sec. 34a.

will come from the above amount, thus, the actual fee award will be less than 33% of the gross settlement value.

o Plaintiff's counsel will mail the Notice and claim form. The parties will retain a settlement claims administrator to establish a qualified settlement fund for purposes of administering the settlement, including payment of all settlement amounts due and associated taxes.[3] The settlement claims administrator will be paid from the settlement fund.

o Plaintiff will seek, and Defendants will not oppose, a service award for Plaintiff of $10,000.00 to be paid from the settlement fund.

Settlement funds not paid out of the settlement amount will remain the property of Defendants.

**5. The settlement provides for a fair resolution of disputed claims.**

The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer*, 2012 WL 1945144, at *6. In this case, Plaintiff's success on the under-reimbursement claim was not certain. Both parties could present arguments that the proper reimbursement rate was higher or lower than the compromise rate used in the settlement. The parties likely would have to make those arguments through expert testimony to a jury. As it is, the settlement gives employees the potential to recover 300% of what Plaintiff's counsel believes to be a reasonable compromise rate in this case.

With respect to Plaintiff's dual jobs claim, the Defendants could have presented legal and factual arguments regarding the nature of Plaintiff's in-store work. These arguments presented a risk to Plaintiff going forward on this claim. Moreover, if the claim's resolution was ultimately determined to be a fact issue, the claim would have required a jury's determination of what may be a technical and confusing issue for a lay person.

---

[3] The Franchisee Defendants will be responsible for the employer-side taxes and will fund the QSF the amount needed to cover such taxes.

With respect to Plaintiff's Prompt Pay Act claim, success was even less certain. This claim is contingent on the under-reimbursement claim or dual jobs claim and mostly covers the same measure of damages. The difference is that the Prompt Pay Act claim also allows for the recovery of liquidated damages, but only if Plaintiff can show there was no dispute regarding the unpaid wages. O.R.C. 4113.15(B). And, as stated above, there was a bona fide dispute regarding both the existence of and amount of the unpaid wages, making Plaintiff's claim unlikely to succeed with respect to any damages beyond the unpaid wages already covered by the underlying claims.

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (7) the public interest. *Kritzer*, 2012 WL 1945144, at *6. Each factor is addressed below.

**Complexity, expense, and likely duration.** As discussed, above, this case could require expert testimony on what a reasonable reimbursement rate is. It also involves approximately 20 locations, which would require substantial discovery. And, the case involves the complexity of a hybrid class/collective action under federal and state wage and hour laws. This factor supports approving the proposed settlement.

**The stage of the proceedings and amount of discovery completed.** Here, the parties stayed the proceedings close to the start of the case, though after conditional certification and dismissal motions were filed. Although this makes the case appear to be undeveloped, during the stay, the parties exchanged the information necessary to evaluate and negotiate the settlement

agreement. Specifically, Plaintiff was provided with employee data relevant to all of the claims at issue, allowing Plaintiff to precisely calculate damages. Moreover, the settlement agreement allows Plaintiff to review additional records in order to confirm what was contained in the data set. *See* Exhibit 1, §2(D). Thus, Plaintiff has everything he needs to assess the strengths and weaknesses of his claims and accurately calculate potential damages.

**The judgment of experienced trial counsel.** Plaintiff's counsel believes that, given the strengths and weaknesses of the claims, this settlement is fair, adequate, and reasonable. Accordingly, Plaintiff's counsel supports approval of this settlement.

**The nature of the negotiations.** The parties reached the above settlement after numerous discussions, exchanges of information, an all-day mediation, and additional negotiations. The parties negotiated at arm's length, through a multi-step process. First, Plaintiff was provided employee data that he requested. From there, Plaintiff was able to calculate class-wide damages for the claims above. Next, the parties exchanged several settlement written proposals and discussed settlement options over the phone. Following that exchange, the parties engaged an independent mediator, Stephen Watring, and attended an all-day mediation session. The mediation session lasted until approximately 10:30 PM.

The mediation ultimately resulted in a settlement in principle from which the parties negotiated the details. The negotiations included additional letters and phone conversations to try to resolve the case. Through those efforts, the parties were able to reach the resolution now presented to the Court. This non-collusive, arms-length process allowed Plaintiff to properly represent the class's interests and achieve a fair settlement agreement.

**Any objections from class members.** This factor will be evaluated at the final approval stage.

**The public interest.** The public interest generally favors settling class action litigation. This case is no different.

### 5.1. The payment of attorneys' fees is reasonable.

Class Counsel will apply for 33% of the gross potential settlement value as attorneys' fees and costs ($355,000). After deducting costs, including mediation and administration costs, the percent actually allocated to fees will be reduced. Even if no additional costs were to be incurred, however, the fee award is in line with what district courts routinely award.[4]

It is also notable that Defendants have agreed to pay any awarded fees separately and *in addition* to the settlement amount allocated to class members. This means that class members will see no reduction in their own claim amounts as a result of any fee award. Class Counsel will file a motion for approval of attorneys' fees along with the motion for final settlement approval.

---

[4] *See, e.g.*, *In re Foundry Resins Antitrust Litig.*, No. 04-MDL-1638 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

Further, the Settlement Agreement is not conditioned on an award of attorneys' fees. *See* Exhibit 1, §4(C). Thus, the Court does not need to decide the issue of attorneys' fees and costs now. In any case, Class Counsel will expend additional attorneys' fees during the notice process and approval process, which will likely affect the Court's evaluation of the final fee award. At the final fairness hearing, the Court will be in a position to grant final approval to the fee request after taking into account any objections to the fee.

### 5.2. The incentive payment is reasonable, and similar payments are routinely awarded.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D. at 374 (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk and service does not improperly grant preferential treatment to class representatives.

The settlement agreement earmarks funds from the settlement amount to compensate Plaintiff $10,000. Plaintiff spent time and effort working with his counsel on this case, including attending a mediation that lasted well into the night. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred. Moreover, in this case, Plaintiff has agreed to a separate, global release of claims that further underpins any additional payment to Plaintiff.

6.  **The Court should certify a hybrid class and collective action for settlement purposes.**

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions are especially appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiff asks the Court to certify the following hybrid class/collective:

> All current and former delivery drivers employed from June 23, 2014 until February 7, 2018 at the Southern Ohio Pizza Locations owned, operated, and/or controlled by the Franchisee Defendants.[5]

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As described below, all of the requirements for class certification are met. Defendants consent to class/collective action certification for settlement purposes.

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Ohio law does not contain such a requirement. *See* Ohio Const. Art. II, Sec. 34a; R.C. 4111.03 and 4111.10. Consequently, plaintiffs may maintain class actions for unpaid wages under Civ. R. 23. *See, e.g., Castillo v. Morales, Inc.*, 302 F.R.D. 480, 489-90 (S.D. Ohio Sept. 2014) (certifying a class for Ohio minimum wage claims). Because the standard to certify a collective action is easier to meet than the standard under Rule 23, meeting the Rule 23 standard also meets the collective action standard. Therefore, collective action certification is also appropriate here.

---

[5] The Southern Ohio Pizza Locations are defined in the settlement agreement and includes 20 locations. *See* Exhibit 1 §1(B).

### 6.1.    Plaintiff has satisfied the four Rule 23(a) prerequisites for class certification.[6]

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement each of these requirements is satisfied here.

### 6.1.1.  Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "Plaintiffs need not demonstrate that it would be impossible to join all of the putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012).

Here, during the relevant time period, well over a thousand class members were employed at the stores that were subject to the pay policies alleged in the Complaint. This easily meets the numerosity requirement.

### 6.1.2.  Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." Commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of

---

[6] Subject to the approval of the Court, and for settlement only, Defendants do not contest whether Plaintiff has satisfies the requirements for class certification pursuant to Rule 23. Any class certification order entered in this Action pursuant to the Settlement Agreement, or otherwise shall not constitute a waiver or admission, in this or in any other proceeding, by Defendants of a finding or evidence that Plaintiff's claims, the claims of any person in the Settlement Class, or any Released Claims are appropriate for class treatment, or that any requirement for class certification is otherwise satisfied in this Action.  Defendants in no way waive their respective rights to challenge Plaintiff's allegations that a class may be certified in this Action, in the event that the Settlement Agreement does not become effective for any reason.

the litigation." *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976). Individual class members need not be identically situated to meet the commonality requirement. Rather, the "requirement is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288 F.R.D. at 183, *citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the litigation's resolution. *Id.*; *see also Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (commonality not required when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue").

Here, the legal theories and relevant facts are common to the class because the class consists of workers that were harmed in the same way. Plaintiff has identified the following common questions of law or fact presented by his claims: (1) how much delivery drivers were reimbursed for their expenses, (2) whether delivery drivers were adequately reimbursed for their delivery expenses, (3) the nature and extent of the drivers' in-store work, (4) whether Defendants can dispute whether they adequately compensated drivers, and (5) what damages and liquidated damages are available to the class members as a result of Defendants' purported practices. Outside of the settlement context—*i.e.*, when Defendants disputed class certification—courts have found that class certification is appropriate for nearly identical claims. *See, e.g., Brandenburg v. Cousin Vinny's Pizza*, LLC, No. 3:16-cv-516, 2017 WL 3500411 (S.D. Ohio Aug. 15, 2017).

### 6.1.3.  Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typical does not mean identical, and the typicality requirement is liberally construed." *Swigart*, 288 F.R.D. at 185, *citing Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D.Ill.1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*, *citing Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Id.*, *citing Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill.1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.,* 214 F.R.D. 207, 214 (S.D. Ohio 2003). Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Swigart*, 288 F.R.D. at 185 (internal citations omitted). Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Laichev,* 269 F.R.D. at 640-41. Additionally, differences in the amount of damages allegedly owed each putative class member "is not fatal to a finding of typicality." *Id.* at 641.

Here, Plaintiff is a member of the putative class and his claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiff contends that each claim in this lawsuit arises from pay practices that were applied to all employees in the same way. For example, the same or similar reimbursement rates applied to all class members. Whether Defendants' pay practices are illegal is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so goes the claims of the class." *Id*. at 640. If Defendants' wage and hour practices violate Ohio law as to Plaintiff, they violate Ohio law as to the putative class members; and, accordingly, the typicality requirement is met here.

### 6.1.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) Do the representatives have common interests with the unnamed members of the proposed class? (2) Will the representatives vigorously prosecute the interests of the class through qualified counsel? *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). These two requirements are met here.

With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff's interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, the proposed class representative is ready, willing and able to fulfill his duties and has done so to date. Likewise, Plaintiff's counsel is well-qualified to handle this matter. Referring to Attorney Andrew Biller (and his firm, Markovits, Stock & DeMarco), the Court has found that Mr. Biller was "highly skilled" and has "prosecuted many wage-and-hour claims." *See Castillo v. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015). Plaintiff's counsel have actively and vigorously pursued Plaintiff's (and the putative class members') claims in this case. Plaintiff's counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case.

### 6.2. Plaintiff has satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

### 6.2.1. Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306, F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct to each subclass making this an appropriate case for resolution by means of a class action. *See supra* Section 3. Most notably, liability turns on what the proper reimbursement rate is for pizza delivery drivers and whether that rate was paid. These issues would be determined based on common proof, and common questions predominate in this case. *See, e.g., Swigart*, 288 F.R.D. at 186. As a result, this case is appropriate for class certification.

### 6.2.2.  A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g., Tedrow v. Cowles*, No. 2:06-cv-637, 2007 WL 2688276, *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers."). Moreover, efficiency augurs in favor of concentrating the claims in this Court, as there is no record of other, similar litigation pending in Ohio. A final resolution of Defendants' liability is also fair because

the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

    **7.**  **The proposed notice conforms to federal law.**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See* Exhibit 2, Notice, generally. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires, that only those employees who file a claim form will participate in the settlement, and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A), and informs potential class members that they must file an attached claim form in order to receive payment from the settlement.

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by regular mail.

**8. The Court should set a hearing for final approval.**

Plaintiff requests that the Court set a hearing for final approval of the settlement to occur approximately 200 days after the Court grants preliminary approval of the proposed settlement. This date would allow a reasonable period for class notices to be mailed and for class members to submit claim forms, object to or opt-out of the settlement, but would not unduly delay the class members' receipt of the settlement fund. The timeline envisioned for administration is below:

| Time | Event |
|---|---|
| Within 15 days of preliminary approval | Franchisee Defendants provide Class Counsel with the final list of class members and their contact information. |
| Within 15 days after receiving the class list | Class Counsel will send the notice. |
| Within 60 days after mailing notices | Class members must file a claim form and release to receive payment. |
| Up to 30 days after the opt-in deadline | Class members who received a second mailing for a Notice may file a claim form and release. |
| On a weekly basis during beginning within seven days of the mailing of the Notice and Claim Form and through the filing of the motion for final approval | Class Counsel will provide a report to Defendants' Counsel (a) identifying all Class Members who have submitted valid Claim Forms, (b) identifying all Class Members whose mailings were returned as undeliverable and the results of any second mailings, and (c) identifying all Class Members who opted-out. |
| Within 20 days of the end of the Opt-in Period | Defendants will transmit records and Class Counsel to the Claims Administrator sufficient to calculate payments due under the agreement. |

**9. Conclusion**

Plaintiff has afforded the Court with reasonable justification to preliminarily approve the settlement of this litigation pursuant to Rule 23(e) and to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel's request for attorney's fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the

Class Notice and Claim Form to class members to provide an opportunity to join this settlement, or opt-out or object to the settlement; and (5) setting the hearing date for the final approval of the settlement.

Respectfully submitted,

*/s/ Andrew Biller*
Andrew R. Biller (0081452)
Andrew P. Kimble (0093172)
MARKOVITS, STOCK & DEMARCO LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*abiller@msdlegal.com*
*akimble@msdlegal.com*
www.msdlegal.com

*Counsel for Plaintiff*

**<u>Certificate of Service</u>**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.


 /s/ Andrew Biller

Andrew Biller