IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

| | |
|---|---|
| Paul Mullins, *On behalf of himself and those similarly situated*, Plaintiff, v. Southern Ohio Pizza, Inc., et al., Defendants. | Case No. 1:17-cv-426 Judge Susan J. Dlott |

---

**PLAINTIFF'S MOTION FOR FINAL SETTLEMENT APPROVAL AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

---

Plaintiff asks that the Court grant final approval of the parties' Settlement Agreement, Doc. 31-1, and, at the conclusion of the settlement process, dismiss the case with prejudice. The Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (0081452)
Terence R. Coates (0085579)
Andrew P. Kimble (0093172)
MARKOVITS, STOCK & DEMARCO LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
abiller@msdlegal.com
tcoates@msdlegal.com
akimble@msdlegal.com
www.msdlegal.com

*Counsel for Plaintiff*

\_

*Counsel for Plaintiff*

Memorandum in Support of Plaintiff's Motion for Final Settlement Approval and for an Award of Attorneys' Fees and Expenses

1. **Introduction**

On June 11, 2018, the Court preliminarily approved the parties' Settlement Agreement. *See* Order, Doc. 33. Plaintiff now asks the Court to grant final settlement approval and, upon Defendants' final payment of the settlement funds, terminate this action.

2. **Background of the Lawsuit**

Plaintiff Paul Mullins delivers pizzas for Southern Ohio Pizza, Inc. ("Southern Ohio Pizza") a Domino's brand restaurant. He brought this case on behalf of himself and similarly situated drivers to recover unpaid wages under the FLSA and Ohio law. In Plaintiff's Complaint, he alleged several wage and hour violations. Doc. 1, PAGEID 38-43. The violations fall into four broad categories, discussed in more detail below.

The primary claim in this lawsuit is that Defendants[1] paid the delivery drivers at or below minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. *Id*. at PAGEID 38-39, ¶¶ 262-270. There is little dispute that employers must reimburse their employees for these costs. *See, e.g.*, 29 C.F.R. 531.35.

---

[1] While Plaintiff uses the term "Defendants" throughout, the Domino's corporate defendants dispute that they employed Plaintiff or the other drivers and, instead, contend that only the Southern Ohio Pizza is the "employer" in this action. Likewise, the individual defendants dispute that they are "employers." So, while all of the defendants dispute liability, the Domino's defendants also dispute that they are employers at all.

3

In this case, the drivers were reimbursed at an average rate of approximately $.28 per mile. Defendant Southern Ohio Pizza contends that this rate fully compensates drivers for their expenses. Plaintiff alleges that the true vehicle cost is higher than $.28. He points to the IRS mileage reimbursement rate as a baseline, which is approximately $.56 per mile. *See* Complaint, Doc. 1, PAGEID 15, ¶ 108.

Second, Plaintiff asserted a claim under the FLSA's tip credit notice requirements. Doc. 1, PAGEID 39, ¶ 265; 29 U.S.C. 203(m). That claim is also resolved under the Settlement Agreement. Doc. 31-1.

Third, Plaintiff asserted that, until May 2017, he and similarly situated delivery drivers were paid a tipped wage rate for hours worked in a non-tipped capacity. *See* Complaint, Doc. 1, PAGEID 13-14, ¶¶ 93-95. Plaintiff contends this policy violated the FLSA's policy prohibiting the payment of a tipped wage rate for an employee working "dual jobs"—one that generates tips, and another that does not. *See* 29 CFR 531.56(e).

Fourth, Plaintiff brings a claim for additional, liquidated damages under Ohio's Prompt Pay Act Claim. Doc. 1, PAGEID 42-43, ¶¶ 289–293. Plaintiff's Prompt Pay Act claim is contingent on an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016). Still, for Plaintiff to prevail on the Ohio liquidated damages claim (as opposed to just repayment of unpaid wages alone), he needs to show that there is no dispute regarding the underlying unpaid wages. O.R.C. 4113.15(B).

### 3. Summary of Settlement Terms

The Settlement Agreement creates a class settlement fund of up to $1,070,000. *See* Doc. 31-1, PAGEID 295. Class members that file a Claim Form and Release will receive an average of

$.51 per mile that they drove for work, and approximately $6.00 per hour spent inside the store, depending on the claims rate. The above numbers are based on the following:

- First, for purposes of settlement negotiations the parties agreed to use a compromise reimbursement rate of $.45 as the baseline measure of possible damages. In other words, damages would be based on the difference between the $.45 compromise number and the $.28 (on average) that Defendants actually reimbursed. The parties' agreement to such compromise rate is not to be construed as an admission by either party that such rate is legally mandated. Such compromise rate has been agreed to solely as a means of resolving the dispute without the expenditure of further defense costs, and in light of the fact that the class fund is capped at $1,070,000.

- Second, the parties used that average difference ($.17) to calculate a total alleged under-reimbursement across the class of workers. This amount is approximately $1,130,805.

- Third, for purposes of settlement the parties assumed that class members who make claims would be entitled to their under-reimbursement damage amount plus an additional two times this amount which represents the full damages under Ohio law (which is more favorable than the FLSA[2]) for a total $3,392,415. Again, this calculation is not to be construed as an admission that additional damages are warranted on the facts here, but solely as a means of resolving the dispute without the expenditure of further defense costs, and in light of the fact that the class fund is capped at $1,070,000.

- Fourth, for purposes of settlement the parties assumed that class members who make claims would be entitled to the difference between full minimum wage and the actual wage the class member was paid for time spent in-store plus an extra two times the difference as statutory damages under Ohio law. Using $6.00/hour as a baseline, the total amount for this claim is approximately $1,966,029 or $655,343 × 3.

- Thus, under the assumptions governing the settlement, the class members would be entitled to $5,358,444.

- Fifth, the parties agreed to cap the potential payout at $1,070,000. This amount represents approximately 20% of the amount otherwise due under the settlement. If the class members claim more than this amount, then each class member will receive a pro rata portion based on their own alleged under-reimbursement.

---

[2] The FLSA allows workers to recover up to two times their unpaid wages. 29 U.S.C. 216(b). Ohio law allows workers to recover three times their unpaid wages. Ohio Const. Art. II, Sec. 34a.

The Settlement Agreement's terms also include:

- Plaintiff's counsel will seek, and Defendants will not oppose, an award of attorneys' fees and costs of $355,000 (approximately 33% of the settlement funds allocated to class members). This amount will be paid *in addition* to the settlement amount above and, thus, does not reduce the amounts going to class members. Plaintiff's expenses will come from the above amount, thus, the actual fee award will be less than 33% of the settlement funds allocated to class members. Doc. 31-1, PAGEID 298.

- Plaintiff's counsel will mail the Notice and claim form. The parties will retain a settlement claims administrator to establish a qualified settlement fund for purposes of administering the settlement, including payment of all settlement amounts due and associated taxes.[3] The settlement claims administrator will be paid from the settlement fund. *Id.*

- Plaintiff will seek, and Defendants will not oppose, a service award for Plaintiff of $10,000.00 to be paid from the settlement fund. *Id.* at PAGEID 297.

- Settlement funds not paid out of the settlement amount will remain the property of Defendants. *Id.*

4. **Background of the Class and the Results of the Settlement**

Now that the claims period has ended, the parties are in a position to describe how the above settlement will play out.

First, the class's participation in the settlement is described below:

|  | **Numbers** | **Percent of Total Class** |
|---|---|---|
| **Total Class Members** | 1,237 | 100% |
| **Opt-ins** | 163 | 13.1% |
| **Non-responding** | 1,074 | 86.9% |
| **Opt-outs** | 0 | 0% |

Next, the Court can examine the amount of money that the class members will claim in the aggregate and the amount class members will receive in relation to their total damages. Based on Plaintiff's counsel's calculations, the class members will claim 100% of the total fund; *i.e.*, all

---

[3] The Franchisee Defendants will be responsible for the employer-side taxes and will fund the QSF the amount needed to cover such taxes.

money will go to the class members and none will revert to the Defendants. Because more money is claimed than allocated, class members will each end up receiving approximately 2.1 × their unpaid wages as calculated under the Settlement Agreement.[4] The class members will receive an average of over $6,000 per person.

5. **The Settlement Procedure**

In this case, following the Court's preliminary approval of the Settlement Agreement, Plaintiff sent the Court-approved notice (Doc. 31-3) to the class members. The notice was sent by regular mail. *See* Andrew Kimble's Declaration in Support of Plaintiff's Motion for Final Settlement Approval and for an Award of Attorneys' Fees and Expenses ("Kimble Decl.,"), ¶ 10, Doc. 35-1, PAGEID 345. Plaintiff received no objections to the settlement.

6. **The Standard for Settlement Approval**

Courts typically use a three-step procedure for approving settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202401, at *1 (S.D. Ohio Jan. 10, 2011). At the first step, the Court determines whether to preliminarily approve the settlement. *Id.* Next, notice of the settlement is sent to interested persons. *Id.* Finally, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement and, presumably, an Ohio law wage and hour settlement (because the same considerations apply), the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144,

---

[4] The estimated settlement award numbers provided herein are not yet complete because Defendants are in the process of verifying the information they provided for approximately 10 class members. The numbers presented here also do not account for the settlement administrator's fees, which will come from the common fund. Plaintiff does not expect the additional information to result in substantial changes to the settlement numbers or distribution, but will provide the Court with final estimated numbers once they are reached.

7

at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. The settlement is also "fair, reasonable, and adequate," as required by Rule 23(e). *See, e.g., UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007).

7. **The settlement provides a fair resolution of disputed claims.**

The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6. In this case, Plaintiff's success on the under-reimbursement claim was not certain. Both parties could present arguments that the proper reimbursement rate was higher or lower than the compromise rate used in the settlement. Some of those arguments are purely legal in nature (*i.e.*, whether the IRS reimbursement rate applies), but some could require expert testimony to a jury. As it is, the settlement gave employees the potential to recover 300% of what Plaintiff's counsel believes to be a reasonable compromise rate.

Success was not certain with respect to the "dual jobs" claim. Defendants could present arguments—again, both legal and factual—that the drivers' inside hours were "related" to their outside hours, and therefore the tipped wage rate was appropriate, and that the drivers each spent differing amounts of time inside and out, so their claims were different. Based on these uncertainties, the settlement represents a substantial recovery for the class members.

With respect to Plaintiff's Tip Credit Notice claim, the Franchisee Defendants were able to present evidence that supports their position that notice was provided after May 2017, and was

8

provided orally before that date. Although Plaintiff believes the notice may have not met the FLSA's specific requirements, it would have been challenging to succeed on the claim.

With respect to Plaintiff's Prompt Pay Act, success was even less certain. This claim is contingent on the under-reimbursement claim and mostly covers the same measure of damages. The difference is that the Prompt Pay Act claim also allows for the recovery of liquidated damages, but only if Plaintiff can show there was no dispute regarding the unpaid wages. O.R.C. 4113.15(B). And, as stated above, there was a bona fide dispute regarding both the existence of and amount of the unpaid wages, making Plaintiff's claim unlikely to succeed with respect to any damages beyond the unpaid wages already covered by the under-reimbursement claim.

Based on the actual claims, class members will receive 210% of damages as calculated in the settlement agreement.

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (7) the public interest. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6; *see also Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 WL 5023950 (S.D. Ohio). Each factor is addressed below.

***Complexity, expense, and likely duration.*** This case involves the complexity of a hybrid class/collective action under federal and state wage and hour laws. "FLSA actions are complex." *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018). Hybrid class/collective actions that involve the FLSA and state law wage claims are the "most complex type." *Id.* As discussed, above, this case could have required expert testimony on what a reasonable

9

reimbursement rate is. It also involves approximately 20 locations, which would require substantial discovery. In light of the case's size and complexity, the case was likely to involve a lengthy litigation process along with the probability that either side may appeal an adverse decision.

This factor supports approving the proposed settlement.

***The stage of the proceedings and amount of discovery completed.*** Here, the parties stayed the proceedings close to the start of the case. Although this makes the case appear to be undeveloped, during the stay, the parties exchanged the information necessary to evaluate the factual and legal issues and to negotiate the Settlement Agreement. Specifically, Plaintiff was provided with a sample of all relevant data (payroll, delivery, reimbursement, etc.) from all 20 locations. Like many wage and hour lawsuits, this one largely rests on Defendants' records.

These records allowed Plaintiff to properly calculate, evaluate, and negotiate a settlement. Moreover, the settlement agreement allowed Plaintiff to review additional records in order to confirm what was on the first set of records. *See* Doc. 31-1, PAGEID 295, §2(D). Plaintiff's counsel has done so. Thus, Plaintiff has everything he needs to assess the strengths and weaknesses of his claims and accurately calculate potential damages.

***The judgment of experienced trial counsel.*** Plaintiff's counsel has extensive experience litigating class action cases, including wage and hour cases like this one. *See generally*, Docs. 35-1 through 35-7, Plaintiff's Counsel's Declarations. Plaintiff's counsel believes that, given the strengths and weaknesses of the claims, this settlement is fair, adequate, and reasonable. Accordingly, Plaintiff's counsel supports approval of this settlement.

*The nature of the negotiations.* The parties reached the above settlement after numerous discussions, exchanges of information, an all-day mediation, and additional negotiations. The parties negotiated at arm's length, through a multi-step process.

First, Plaintiff's counsel was then provided with all of the relevant driver, payroll, and delivery data from which to value the Plaintiff's claims. From there, Plaintiff was able to calculate and extrapolate class-wide damages for the claims above.

Next, the parties exchanged initial settlement proposals. Following that exchange, the parties engaged an independent mediator, Steven Watring, and attended an all-day mediation session that last until nearly 11:00pm. At the mediation, Defendants' counsel provided Plaintiff with additional information and documents.

Through the parties' efforts, the parties were able to reach the resolution now presented to the Court. This non-collusive, arms-length process allowed Plaintiff to properly represent the class's interests and achieve a fair settlement agreement.

*Any objections from class members.* Notice of the class action settlement was provided in accordance with the Class Action Fairness Act. There have been no objections from class members.

*The public interest.* The public interest generally favors settling class action litigation. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions."). This case is no different.

8. **The payment of attorneys' fees and costs is reasonable.**

Under either the parties' Settlement Agreement (Doc. 31-1, Settlement Agreement, PAGEID 298, §4) or Fed. R. Civ. P. 23(h), Plaintiff is entitled to an attorneys' fee award and reimbursement of costs. The Settlement Agreement allocates $355,000 for attorneys' fees and costs other than the claims administrator. Here, Plaintiff has advanced costs of $6,310.55. Kimble Decl., ¶ 9, Doc. 35-1, PAGEID 345. As result, Plaintiff seeks $348,689.50 in attorneys' fees, *i.e.*, 24.47% of the common fund of $1,425,000. Thus, Plaintiff asks for an award of $355,000 in total attorneys' fees and costs ($348,689.50 in attorneys' fees and $6,310.55 in costs), as agreed to in the Settlement Agreement.

### 8.1. The Court should use the "percentage of the fund" approach to calculate a reasonable fee.

In the Sixth Circuit, district courts may use either the percentage of the fund or lodestar method to calculate fee awards. *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018). Courts in the Southern District of Ohio generally use the percentage of the fund method. *Id.*

There are good reasons to prefer using the percentage of the fund method. *See In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007) (providing a good discussion on the subject). The percentage approach encourages efficiency, judicial economy, and aligns the interests of lawyers with the class. *Id.* In contrast, the lodestar method burdens courts "with the tedious task of auditing time records," and is still subject to arbitrariness. *Id.*

In this case, the Settlement Agreement requires Defendants to pay the fee award *in addition* to the money going to class members. Exhibit 1, §4(A). Thus, Plaintiff is not requesting an award that would take money from the class's "fund." *Id.* Still, in situations where fees are paid in

addition to the class's money, "the common fund analysis properly applies." *See Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *5 (S.D. Ohio Oct. 3, 2018).

### 8.2. The fund is $1,425,000.

In order to determine the amount of the "fund" for purposes of gauging a fee award, "courts include all amounts benefiting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs." *Rikos*, 2018 WL 2009681 at *8.

As a result of this case, class members will receive $1,070,000, plus attorney's fees and expenses. Plaintiff requests an award of 33% of the amount that will go to class members, or $355,000, for fees and expenses.

That said, the proper measure when analyzing a percentage of the fund award is to take the attorney's fees "as the numerator and the denominator is the total dollar figure of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Rikos*, 2018 WL 2009681 at *8, *quoting Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). Under *Gascho*, the correct measure is:

$$\$348{,}689.50 / \$1{,}425{,}000^5 = 24.46\% \text{ fee award}$$

Whether calculated as 24.46% or 33%, the proposed fee award is well within the range courts in this district have found to be reasonable. *See Rikos*, 2018 WL 2009681 at *9. Awards between 20% and 50% have been deemed reasonable. *Id.* Although the proposed award is less than the 30%+ district courts routinely award,[6] Class Counsel agreed to limit their fee petition because Franchisee

---

[5] $1,070,000 going to the class + $355,000 in fees and expenses. The Settlement also provides payment for Settlement administration costs to RG2 Claims Administration LLC not to exceed $15,000. Doc. 31-2, PAGEID 298, § 4.B. Under *Gascho*, the total benefit to the class "may also include costs of administration." 822 F.3d at 282.

[6] *See, e.g.*, *In re Foundry Resins Antitrust Litig.,* No. 04-MDL-1638, Doc. 247 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted);

Defendants have agreed to pay any awarded fees separately and *in addition* to the settlement amount allocated to class members. This means that class members will see no reduction in their own claim amounts as a result of any fee award.

### 8.3. The *Ramey* factors support Plaintiff's requested fee award.

When reviewing a fee award's reasonableness, courts also consider six factors:

> (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides.

*See Rikos*, 2018 WL 2009681 at *9, *citing Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Each factor, addressed below, support Plaintiff's fee request.

***The value of the benefits rendered to the class.*** Plaintiff has achieved an excellent result in this lawsuit. All class members who joined the lawsuit will receive approximately 210% of their unpaid wages as calculated under the settlement agreement.

***Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others.*** Wage and hour cases, like this one, often involve a large number of workers with relatively small individual claims. Though the claims are individually small, the unpaid wages

---

*In re Skelaxin Antitrust Litig.*, Case No. 2:12-cv-83, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa.) (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

make a significant difference in the lives of low-wage workers, like the pizza delivery drivers at issue here. Society has an interest in rewarding attorneys who take on these cases and receive real benefits to exactly the types of workers the FLSA is designed to protect.

*Whether the services were undertaken on a contingent fee basis.* Plaintiff's counsel took on this case on a contingent fee basis. Kimble Decl., ¶ 6, Doc. 35-1, PAGEID 345.

*The value of the services on an hourly basis (the lodestar cross-check).* Courts in this district may also perform a "lodestar cross-check" to ensure the overall fee is reasonable. *Rikos*, 2018 WL 2009681, at *10. A lodestar cross-check, however, is unnecessary. *Id.*

Plaintiff's counsel has provided redacted, detailed records of their time, billing rates, and tasks completed. Kimble Decl., ¶ 7, Doc. 35-1, PAGEID 345. In any case, the total lodestar in this case to date is $110,046.50. Based on counsel's experience, Plaintiff expects additional hours, potentially dozens of additional hours, of work in finalizing the Settlement, answering follow-up calls from class members, and ensuring payment is received. Kimble Decl., ¶ 8, Doc. 35-1, PAGEID 345. Not counting these future expected hours, the proposed award is roughly 3.17 times the lodestar. This lodestar multiplier is in line with other cases. *See, e.g., Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Castillo v. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (holding that a 2.5 multiplier is "typical of lodestar multipliers in similar cases").

*The complexity of the litigation.* Generally speaking, "FLSA actions are complex." *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018). Hybrid

class/collective actions that involve the FLSA and state law wage claims are the "most complex type." *Id.* This case is no exception. The complexity of the case weighs in favor of the fee award.

***The professional skill and standing of counsel on both sides.*** Plaintiff's counsel is well-versed in wage and hour law. Indeed, wage and hour litigation is essentially Messrs. Biller and Kimble's exclusive practice area. *See* Kimble Decl., ¶¶ 15-27, Doc. 35-1, PAGEID 346-50; Andrew Biller's Declaration in Support of Plaintiff's Motion for Final Settlement Approval and for an Award of Attorneys' Fees and Expenses ("Biller Decl.,"), ¶¶ 9-15, Doc. 35-2, PAGEID 353-55.  Another court in this district held, referring to Mr. Biller and his firm, "the attorneys were highly skilled. Plaintiffs' counsel have prosecuted many wage-and-hour claims." *Castillo*, 2015 WL 13021899, at *7.

Likewise, Defendants' counsel are well-versed in wage and hour litigation. *See* https://www.fisherphillips.com/attorneys-kcaminiti; https://www.fisherphillips.com/attorneys-htighe; https://www.fisherphillips.com/attorneys-mparker. (last visited on December 27, 2018).

**8.4.    Plaintiff is also entitled to an award $6,310.55 for his expenses.**

The Settlement Agreement allows for payment of expenses. Exhibit 1, §4(B). Except for the third party administrator, the total costs incurred by Plaintiff to date are $6,310.55. Kimble Decl., ¶ 9, Doc. 35-1, PAGEID 345. The majority of the expenses came from the following sources:

- Filing fee: $400
- Mediation costs: $2,852.87
- Sending Notice to Class Members: $2,899.70

*Id.*

**9.  The incentive payment is reasonable, and similar payments are routinely awarded.**

As the Supreme Court recently recognized, a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, --- U.S. ----, 138 S.Ct. 1800, 1811, n.7, 201 L.Ed.2d 123 (2018). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) *rev'd*, 24 F. App'x 520 (6th Cir. 2001)[7]; *see also Dun & Bradstreet*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk and service does not improperly grant preferential treatment to class representatives. Moreover, incentive awards are appropriate in wage and hour cases because a named plaintiff's efforts "further[ ] the important public policies underlying the Fair Labor Standards Act." *Dillow*, 2018 WL 4776977, at *8.

The Settlement Agreement earmarks funds from the settlement amount to compensate Plaintiff $10,000. Plaintiff spent time and effort working with his counsel on this case, including attending an all-day mediation that went until 11pm. Plaintiff was actively involved in the litigation, staying in regular communication with counsel, reviewing the notice, and evaluating the best result for the class. Kimble Decl., ¶ 12, Doc. 35-1, PAGEID 345-46. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred.

---

[7] Reversed as to the incentive award because it was not contemplated in the Settlement Agreement. In doing so, the 6th Circuit held "we intimate no view as to the propriety of such awards in general." *In re S. Ohio Corr. Facility*, 24 F. App'x 520, 526 (6th Cir. 2001).

17

A $10,000 award is reasonable in this case where Plaintiff recovered substantial monetary benefits for a class of low-wage workers. This award is in the range of other such awards. *See, e.g., Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (describing two $10,000 awards as "modest" and citing awards ranging from $4,000 to $12,000); *Arledge*, 2018 WL 5023950, *6 (awarding $10,000 service award to class representative in a case against another Domino's franchise and raising nearly identical claims).

**10. The Court should certify a hybrid class and collective action for settlement purposes.**

As detailed in Plaintiff's Motion for Preliminary Settlement Approval (Doc. 31), class and collective action certification is appropriate. *See* Fed. R. Civ. P. 23(e); *Arledge*, 2018 WL 5023950, *6. Those arguments remain and Plaintiff incorporates them herein.

**11. Conclusion**

Plaintiff asks that the Court grant final approval to the parties' Settlement Agreement and, upon Defendants' payment of the settlement funds, dismiss the lawsuit with prejudice.

Plaintiff also asks the Court to award $348,689.50 in attorneys' fees, $6,310.55 in expenses, and approve a $10,000 incentive award to Plaintiff.

Following the Fairness Hearing, if it would assist the Court, Plaintiff can draft a decision and order reflecting the Hearing's outcome, and will share it with Defendants for comment prior to filing.

Respectfully submitted,

*/s/ Andrew Kimble*
 Andrew R. Biller (0081452)
 Terence R. Coates (0085579)
 Andrew P. Kimble (0093172)

Markovits, Stock & DeMarco LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*abiller@msdlegal.com*
*tcoates@msdlegal.com*
*akimble@msdlegal.com*
www.msdlegal.com

*Counsel for Plaintiff*

**Certificate of Service**

  Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system on December 27, 2018.

         */s/ Andrew Kimble*

         Andrew Kimble