In the United States District Court
for the Southern District of Ohio
Western Division at Cincinnati

| | |
|---|---|
| Paul Mullins, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:17-cv-426 |
| Plaintiff, | Judge Susan J. Dlott |
| v. | |
| Southern Ohio Pizza, Inc., et al, | |
| Defendants. | |

Order Granting Plaintiff's Unopposed Motion for Final Settlement Approval

Before the Court are Plaintiff's unopposed motion for final approval of the class action settlement (Doc. 36), Plaintiff's counsel's declarations in support (Doc. 35), and the oral arguments presented by counsel at the fairness hearing on January 10, 2019. For the reasons stated below, the Court grants Plaintiff's motion.

## I.    Background

### a.    Claims at Issue

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers. Plaintiff alleges that Defendants under-reimbursed Plaintiff and similarly situated workers for their expenses related to using their own vehicles to deliver pizzas. *See* Doc. 1, ¶¶ 99-105. Plaintiff also alleges that Defendants improperly paid Plaintiff and similarly situated workers a tipped wage rate for hours worked in a non-tipped capacity, and failed to properly provide notice of the tip credit requirements of the FLSA. *Id*. at ¶¶ 93-97. Plaintiff brings his claims under the Fair Labor

1

Standards Act, analogous state wage and hour laws, and the Ohio Prompt Pay Act. *Id.* at ¶¶ 262-98.

The Domino's corporate defendants (Domino's Pizza, Inc., Domino's Pizza LLC, and Domino's Pizza Franchising, LLC) allege that they did not employ Plaintiff, rather the franchisee defendants employed Plaintiff. Moreover, all Defendants dispute that they under-reimbursed Plaintiff or similarly-situated delivery drivers. Defendants also dispute that they failed to provide the required FLSA tip credit notice and that they improperly paid a tipped wage rate for some of the drivers work hours.

### b.  The Settlement Agreement

The parties' settlement agreement obligates Defendants to pay $1,070,000 to class members who submit a claim form and release. Doc. 36 at PAGEID 410-11. Generally speaking, this money is allocated to class members such that they will receive a reimbursement amount of up to $.51 per mile they drove. *Id.* This settlement amount is based on reimbursing class members for the difference between a $.45 compromise reimbursement rate and the reimbursement rate they were actually paid (the average is $.28 per mile), times three to account for Ohio Constitution, Article II, Section 34a damages. *Id.*

Based on the claim numbers that counsel presented to the Court at the Fairness Hearing, approximately 172 class members filed claim forms. Those class members who filed claim forms will receive an average of approximately $6,000 each, though individual awards will vary based on the number of miles each class member drove, the reimbursement payments they received for those miles, and the number of hours each class member worked inside the restaurant. Class members who filed claim forms will receive over 200% of their alleged unpaid wages, based on the settlement formula.

2

FPDOCS 34909754.1

In addition to the above, Defendants have agreed to not oppose a fee award of up to $348,689.50 in attorneys' fees, plus reasonable expenses of $6,310.55. Doc. 36 at PAGEID 418. These amounts will be paid separately and in addition to the amounts going to the class members and, thus, class members will not see a reduction in their awards as a result of a fee and expense award. *Id.* The sole exception is that the costs incurred by the Settlement Administrator will come from the settlement fund, up to a maximum of $15,000. *Id*. at PAGEID 419, n. 5.

## II.     Analysis

### a.  The parties' settlement is fair and reasonable.

Before a district court approves a settlement, the Court must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, Case No. 2:11-cv-1061, 2013 WL 2295880, at *4 (S.D. Ohio May 24, 2013) (citation omitted). In the Sixth Circuit, district courts consider seven factors in determining whether a class settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). As set forth below, each of these factors weighs in favor of approving the parties' settlement. *Arledge v. Domino's Pizza, Inc*., No. 3:16-cv-386, 2018 WL 5023950, *1 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (granting final settlement approval in pizza delivery driver reimbursement case).

### i.  The Risk of Fraud or Collusion

The evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length negotiations conducted by experienced counsel on both sides, including an all-day

3

mediation that lasted until 11pm. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008). Nothing before the Court suggests that the Settlement is the result of fraud or collusion.

### ii.   The Complexity, Expense and Likely Duration

From the outset, the Court notes that wage and hour class and collective actions, such as this, are inherently complex and time-consuming. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014). This case was no exception.

As described in the parties' filings and as discussed at the Fairness Hearing, this case involved complex issues of fact and law including issues regarding the legally-mandated reimbursement rate for delivery drivers and whether hours worked inside the restaurant were "related" to the drivers' tipped work. These issues would require substantial briefing, discovery, and potential expert testimony. Resolving these issues and the remaining discovery, procedural, merits, and damages questions would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this weighs in favor of the settlement. *See, e.g., Arledge*, 2018 WL 5023950, *2.

### iii.  The Amount of Discovery Engaged in by the Parties

The parties exchanged the most relevant pieces of information in this case—records of driver, payroll, and delivery data. Doc. 36 at PAGEID 416. Specifically, Plaintiff's counsel was provided with a sample of all relevant data (payroll, delivery, reimbursement, etc.) from all 20 locations. *Id.* From there, Plaintiff calculated and extrapolated class-wide claims and damages. *Id.* Then, as part of the settlement agreement, Plaintiff reviewed additional records to confirm

4

Plaintiff's initial analysis. *Id*. The Court finds that this exchange of information is sufficient to inform settlement negotiations by experienced counsel.

### iv.   The Opinions of Class Counsel and Class Representatives

The Class Representative, present at the fairness hearing, approves the Settlement Agreement. Class Counsel believes that the settlement is fair, adequate and reasonable. Doc. 36, PAGEID 416. This factor weighs in favor of approval. *See In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 WL 717519, at *11 (E.D. Mich. Feb. 22, 2011) ("Class counsel's judgment that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the settlement") (internal quotations and citations omitted).

### v.   The Reaction of Absent Class Members

The class's reaction supports approval. Out of 1,237 class members, none rejected, objected, or excluded themselves from the settlement. 172 or 13.9% of the putative class members filed claim forms and releases, and those individuals accounted for approximately 29% of the total damages incurred by the class.

### vi.   The Public Interest

Public policy favors settlement of class action lawsuits. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014). This case is no exception. The settlement provides relief to the class members, avoids further litigation in a complex case, and frees the Court's judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

FPDOCS 34909754.1

### vii.  Overall Settlement Terms

The Court finds that the settlement provides a fair, adequate, and reasonable resolution to this lawsuit. The settlement provides participating class members with a substantial recovery for the claims raised in this lawsuit. The Court finds this is a good result for the class members and appropriately accounts for the risk of going forward with the litigation. *See, e.g., Arledge*, 2018 WL 5023950.

The Court **GRANTS** Plaintiff's unopposed motion for final approval of the parties' settlement agreement.

### b.  Fees, Expenses, and Contribution Awards

### i.  Plaintiffs' counsel are entitled to their requested fee

Plaintiff's counsel request an order approving the payment of $348,689.50 in attorneys' fees, and $6,310.55 in advanced expenses. Doc. 36 at PAGEID 418. In this case, the settlement agreement provides that the attorneys' fees and expenses (other than the costs of settlement administration) will be paid separately from and in addition to the money going to the class. *Id.* Defendants do not object to the requested fee award.

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h). *See Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

FPDOCS 34909754.1

### 1.  The Court adopts the percentage approach.

In the Sixth Circuit, district courts have the discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, as well as the particular circumstances of the actual cases pending before the Court, using either the percentage or lodestar approach. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761; *Arledge*, 2018 WL 5023950, *3. In the Southern District of Ohio, the preferred method is "to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (citation omitted).

Although this case is not precisely a common fund case (as the funds going to pay for attorneys' fees and expenses are to be paid under the Settlement Agreement separate and apart from the money that goes directly to the class members), nonetheless, the common fund analysis properly applies. *Arledge*, 2018 WL 5023950, *3; *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 WL 13202629, at *1 (S.D. Ohio Jan. 10, 2011). The Court finds that the percentage approach is proper in this case.

To determine the amount of the "fund" for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs. As the Sixth Circuit explained, when conducting a percentage of the fund analysis, "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). To determine the amount of the benefit conferred, courts look to the total amount made available to the class, rather than the amount

7

ultimately claimed by class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

Here, the settlement will result in a total benefit to the class of at least $1,425,000: $1,070,000 in payments to class members, $348,689.50 in attorneys' fees, and $6,310.50 in expenses. Plaintiff's fee request is 24.47% of this amount.

Even if the Court did not consider fees and expenses as part of the class's benefits, Plaintiff seeks 33% of the amount directly going to the class members. Under either calculation, whether 24.47% or 33%, this Court finds Plaintiff's request is reasonable and within the ranges of fees typically approved by courts in the Sixth Circuit. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001) ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds*, 24 F. App'x 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund").

## 2.  The *Ramey* factors

In reviewing the reasonableness of the requested fee award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196. Here, each of these factors weighs in favor of granting the requested fee.

8

First, Plaintiffs' counsels' work resulted in significant benefit to participating class members whereby each class member who filed a claim form will receive over 200% of their alleged unpaid wages as calculated under the settlement. The settlement provides tangible relief to Class Members now and eliminates the risk and uncertainty parties would otherwise incur if this litigation were to continue. The fact that there have been no opt-outs to the settlement and no objections demonstrates that class members recognize the settlement's substantial benefit. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) ("a small number of objections, particularly in a class of this size, indicates that the settlement is fair, reasonable and adequate").

Second, the Court finds that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and attorneys who take on class action cases enable this. *See Arledge,* 2018 WL 5023950, *4; *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2:15-cv-1066, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017) (citation omitted). In wage and hour cases, like this one, class and collective actions allow large number of low-wage workers recover unpaid wages. Plaintiff's counsel's effort resulted in a substantial monetary benefit for the participating class members. Many of the class members would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant. *Id.* Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

Third, Plaintiff's counsel litigated this matter on a wholly-contingent basis with no guarantee of recovery. Doc. 36 at PAGEID 421.

Fourth, a lodestar cross-check, while unnecessary, also supports Plaintiff's counsel's fee request. *See Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018). Under the lodestar calculation, the Court multiplies the number of hours

9

reasonably expended on the litigation by a reasonable hourly rate. *See Gascho*, 822 F.3d at 279 (citation omitted). The Court may enhance the lodestar with a separate multiplier that can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. *Id.* at 279, 280.

Here, at the time they moved for final approval, Plaintiff's counsel expended 340.85 hours litigating this case. *See* Doc. 35-8, PAGEID 406. Plaintiff's counsel's lodestar was $110,046.50, for an average hourly rate of $322. In addition to the hours worked directly on this case, Plaintiff's counsel, having established an expertise in "pizza delivery driver" litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here. The Court finds that the amount of time expended in this case is reasonable. Likewise, the Court finds that the overall lodestar is reasonable. *Id.*

Fifth, as noted above, this was a complex wage and hour class/collective action involving complicated issues of fact and law. The Court finds that this factor weighs in favor of approval.

Sixth, and finally, Plaintiff and Defendants are represented by highly qualified counsel who have substantial experience in federal courts and class action litigation. *See* Doc. 35 and attachments. Plaintiff's counsel has substantial experience in wage-and-hour litigation. *Castillo*, 2015 WL 13021899, at *7 (referring to Mr. Biller).

For these reasons, the Court determines the fees requested are reasonable, and **GRANTS** Plaintiff's Counsels' request for fees in the amount of $348,689.50.

### 3. Plaintiff's counsel are entitled to reimbursement of expenses.

Under the common fund doctrine, Plaintiff's counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

10

Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.* (quotation omitted).

Here, Plaintiffs' counsel request $6,310.55 in expenses that have been incurred prosecuting this case. Doc. 36, PAGEID 422. The limited expenses primarily include filing fees, mediation costs, and class notice-related fees. Upon review, the expenses were reasonable and necessary in connection with litigating and resolving this case and are therefore reimbursable. Defendants do not dispute that the fees are reasonable and reimbursable.

Accordingly, the Court **GRANTS** Plaintiffs' Counsels' request for $6,310.55 in expenses.

### ii.   The class representative is entitled to a contribution award.

Under the terms of the settlement agreement, Plaintiff requests a service award of $10,000. The Supreme Court recently recognized that a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811, n.7 (2018). Courts typically authorize contribution (or "incentive" awards) to class representatives for their often extensive involvement with a lawsuit. *See Estep v. Blackwell*, No. 1:06-cv-106, 2006 WL 3469569, at *5–6, 2006 U.S. Dist. LEXIS 89360, at * 15 (S.D. Ohio Nov. 29, 2006) (citations omitted). Such compensation to named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case. *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997).

The Court finds that Plaintiff contributed substantial time and effort to the lawsuit and only through Plaintiff's efforts did a large group of low-wage workers receive a substantial award. Plaintiff's efforts furthered the important public policies underlying the Fair Labor Standards Act.

11

The Court further finds that it is appropriate to reward wage and hour plaintiffs who obtain tangible benefits for their fellow workers. *See, e.g., Arledge*, 2018 WL 5023950, \*6.

Accordingly, the Court **GRANTS** Plaintiff's request for a service award of $10,000.

### III.    Conclusion

Based upon the foregoing, Plaintiff's unopposed motion for final settlement approval (Doc. 36) is **GRANTED**. Accordingly:

1. The Class is certified for settlement purposes pursuant to Fed. Rule 23(e).  Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on all of the parties' submissions, the settlement agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class members to the settlement agreement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the class members.  The Class is certified for settlement purposes pursuant to Fed. Rule 23(e).

2. The terms and provisions of the Settlement Agreement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement Agreement will result in substantial savings of time, money and effort to the Court and the parties, and will further the interests of justice.

FPDOCS 34909754.1

3. All Class Members who did not exclude themselves are bound by the terms of the Settlement Agreement, including the Release contained in paragraph 5, (Doc 31-1 PageID#298-299) and the Judgment entered in this Action.

4. Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action.

5. The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Plaintiff's counsel in prosecuting the claims on behalf of the class members. Plaintiff participated in the Action, acted to protect the Class, and assisted his counsel. The efforts of Plaintiff's counsel have produced the Settlement Agreement entered into good faith, and which provides a fair, reasonable, adequate, and certain result for the Class. Plaintiff's counsel have made application for an award of $348,689.50 in attorneys' fees and $6,310.50 in expenses incurred in the prosecution of the Action on behalf of themselves and the other Plaintiff's counsel. The combined total of the award is $355,000, which the Court finds to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $355,000 as attorneys' fees and expenses. Further, Plaintiff is entitled to a fair, reasonable and justified service award of $10,000, to be paid by Defendant from the Settlement Fund.

6. Under the terms of the Settlement Agreement, the parties will notify the Court once the final settlement payment is made, at which time the Court will dismiss the Action with prejudice and without costs to any of the parties.

FPDOCS 34909754.1

14

7.  Without affecting the finality of this Judgment, the Court reserves jurisdiction over

the implementation, administration, and enforcement of this Judgment and the

Settlement Agreement, and all matters ancillary thereto.


   1/17/2019                              S/Susan J. Dlott
   DATE                                   UNITED STATES DISTRICT JUDGE

14

FPDOCS 34909754.1